IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEWAYNE SHELTON, | § | |
| TDCJ-CID NO.1254161, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION H-10-0452 |
| | § | |
| SGT. MICHAEL LEMONS, *et al.*, | § | |
| Defendants. | § | |

<u>OPINION ON DISMISSAL</u>

Plaintiff Dewayne Shelton, a state inmate proceeding *pro se* and *in forma pauperis*, has filed a complaint pursuant to 42 U.S.C. § 1983 and a more definite statement of his claims, along with copies of selected Step 2 grievances, copies of two disciplinary hearing records, and copies of two health summary sheets ("HSM-18").  Plaintiff alleges that defendants have retaliated against him for the grievances that he filed against him by assigning him to a job that violated his work restrictions, denying him adequate medical care, confiscating his property, falsely charging him with disciplinary violations, and transferring him to another unit.  (Docket Entries No.1, No.15).  Defendants[1] have filed a motion for summary judgment and submitted affidavits of their medical expert and two defendants, selected copies of plaintiff's medical records, one grievance record, and two disciplinary hearing records.  (Docket Entry No.30).  Plaintiff has not filed a response to the summary judgment motion but moved to stay summary judgment proceedings pending further discovery.  (Docket Entry No.38).

The Court will deny plaintiff's motion to stay summary judgment, grant defendants' motion for summary judgment, and dismiss the complaint with prejudice.

---

[1] Defendant Michael Lemons has not been served with process and therefore, has not filed an answer.  (Docket Entries No.31, No.34).

## I. BACKGROUND

### A. Work Restrictions, Job Assignments, Medical Care

Plaintiff alleges that he suffers some impairment and pain in his back and right arm from injuries he sustained in a car wreck years before he filed the present suit.  (Docket Entry No.1, page 8).  Plaintiff contends, and the record shows, that on January 29, 2008, plaintiff complained to NP Brenda Hough about pain in his left shoulder.  (Docket Entries No.1, page 8; No.30-2, page 42).  The same day Dr. Yap issued a HSM-18 with numerous work restrictions that included limited standing, no lifting more than twenty pounds, no bending at the waist, no squatting, no reaching over the shoulder, no repetitive use of hands, no walking on wet or uneven surfaces, no work in direct sunlight, and no exposure to temperature extremes; he noted that plaintiff was assigned to work as a kitchen helper at the Ellis I Unit Trustee Camp.  (Docket Entry No.15-2, page 3).

NP Hough again saw plaintiff on February 4, 2008, for the left shoulder disorder, which she noted to be either a rotator cuff injury or bursitis.  (Docket Entry No.30-2, page 40).  She gave him a medically unassigned restriction for ten days and ordered an x-ray of the shoulder.  (*Id.*, page 39).  On February 8, 2008, Hough noted in her morning chart review that an officer on the L-Wing reported that plaintiff was seen every day on the "rec yard" lifting weights and that plaintiff complained that the kitchen staff forced him to work outside his medical restrictions.  (*Id.*).  Hough noted that if plaintiff can lift weights, he did not need the multiple restrictions that he had been given.  (*Id.*).  She removed the work assignment restrictions from his HSM-18.  (Docket Entry No.15-2, page 4).

2

Plaintiff claims that the same morning, he learned from other inmates at the Trustee Camp that the kitchen supervisor, Sgt. Michael W. Lemons, boasted that he had plaintiff's work restrictions removed from his HSM-18.  (Docket Entry No.1, page 4).  Plaintiff claims that when confronted, Lemons told him that he would be alright, which plaintiff thought to be Lemons's admission that he reported plaintiff's recreational activity to the medical department.  (*Id.*).  Plaintiff claims that Lemons also threatened to work him and asked plaintiff "what was [he] going to do about it, write a grievance against him" like he did against other kitchen supervisors.  (*Id.*, pages 4, 8).  Plaintiff reported Sgt. Lemons's actions to Lt. Steven R. Kramer, who refused to help.  (*Id.*, page 8).

Later that day, plaintiff received official notification that NP Hough had removed all of the work restrictions from his HSM-18.  (Docket Entries No.1, page 8; No.15-2, page 4).  He unsuccessfully grieved Lemon's alleged conduct and the removal of his restrictions in Step Grievances No.2008094949.[2]  (Docket Entries No.1, page 8; No.1-1, pages 1-2).

On February 10th or 11th, plaintiff sent a request form to the medical department seeking medical attention and information about the removal of his work restrictions.  (Docket Entry No.1, page 8).  He was informed of the weight-lifting report by the L-Wing officer and was denied medical attention.  (*Id.*, page 8-9).  On February 15th, plaintiff returned to work in the kitchen and was informed that Sgt. Lemons had changed his job to pot washer.  (*Id.*, page 9).  After several hours of work, plaintiff tried to lift a heavy mixing bowl and experienced excruciating pain in his left shoulder.  (*Id.*).  Because he could not move his arm, he was taken to the infirmary, where he was examined by PA John Wang.  (*Id.*).  Wang noted that plaintiff's

---

[2] The response to Step 2 Grievance No.2008094949 states that his allegations of misconduct by Food Service Manager Lemons could not be sustained.  (Docket Entry No.1-1, page 2).

restriction had been lifted because of the L-Wing officer's report; Wang also indicated that an x-ray of plaintiff's shoulder showed moderate arthritic changes and that plaintiff suffered pain at the joint.  (Docket Entry No.30-2, page 38).  Wang noted that the examination was not useful because plaintiff was trying to show that he could not work in the kitchen as a pot washer.  (*Id.*).  Wang, however, added a few restrictions back to the HSM-18, one of which was not lifting anything over twenty pounds.  (*Id.*).  Plaintiff unsuccessfully grieved his medical care in Step Grievance No. 2008110828.  (Docket Entry No.1-1, pages 3-4).

Plaintiff returned to work in the kitchen the next day and was again assigned to wash pots.  (Docket Entry No.1, page 9).  Plaintiff confronted Lemons about the assignment but he refused to change it, which plaintiff believes was in retaliation for the grievances that plaintiff had filed against other kitchen officers.  (*Id.*).  Plaintiff complained of Lemons's actions in Step 1 Grievance No. 2008096531, which he claims was filed on February 22, 2008.  The grievance, however, was returned unprocessed because it was filed in excess of the rule prohibiting more than one grievance in seven days.[3]  (Docket Entries No.1, pages 9-10; No.15, page 8; No.1-1, page 5).  Plaintiff contends that Grievance Investigator Tricia L. Hollingsworth falsified the date that the grievance office received the earlier-filed Step 1 Grievance No. 2008094949, as February 20, 2008, thereby justifying the unprocessed return of Step 1 Grievance No. 200896531.  He claims Hollingsworth covered for Lemons by this action, thus allowing Lemons not to answer "for the series of event[s] initiated by him."  (Docket Entry No.15, page 8).  Plaintiff complained by grievance to the Administrator of the Grievance Program Keith

---

[3] Plaintiff indicates that he also filed Step 1 Grievance No. 2008095182 on February 20, 2008, which was returned unprocessed because it was filed in violation of the seven-day rule.  (Docket Entry No.1, pages 9-10).

Clendenner about Hollingsworth's actions but he received no response from Clendenner. (Docket Entry No.15, page 4).

Plaintiff complained to Practice Manager Shanta Crawford on February 22 and 26, 2008, that NP Hough had terminated his work restrictions and that PA Wang had denied him adequate medical attention. (Docket Entry No.15, page 5). Crawford responded that she had no authority over clinical decisions and suggested that plaintiff submit a sick call request if he did not have the proper medical restrictions. (*Id.*).

Plaintiff claims that on March 5, 2008, Dr. Betty Williams examined him on a complaint of pain in his left shoulder. (Docket Entry No.1, page 10). Williams confronted him about the report that he was lifting weights and plaintiff told her that the report was false. (*Id.*). Plaintiff contends that Williams returned two more restrictions to the HSM-18, ignored his new injuries, and sent him back to work. (*Id.*). Dr. Stephen Bowers, defendant's expert, attests by affidavit that Dr. Williams's notes from the examination on March 3, 2008, show that she assessed plaintiff's shoulder injury as degenerative joint disease. (Docket Entry No.30-1, page 6). She reinstated two restrictions but found no medical necessity to reinstate all of the restrictions. (*Id.*). She also referred him to ortho-telemedicine. (*Id.*). Plaintiff unsuccessfully grieved his medical care in Step Grievance No. 2008110828. (Docket Entry No.1-1, pages 3-4).

Plaintiff's medical records show that he was seen twice more in March by NP Hough for complaints about his left shoulder and that he was treated with medication. (Docket Entries No.30-1, pages 6; No.30-2, pages 33-36). Hough also gave plaintiff a medical unassigned restriction for ninety days. (Docket Entries No.30-1, page 6; No.30-2, page 33).

On May 27, 2008, plaintiff was seen by a specialist Dr. Handley, who referred him to the University of Texas Medical Branch ("UTMB") in Galveston for an MRI; Handley also recommended that plaintiff remain medically unassigned until results of the MRI were available. (Docket Entries No.1, page 10; No.30-1, page 7; No.30-2, page 32). Two days later, Dr. Williams followed up with orders from Dr. Handley. (Docket Entries No.30-1, page 7; No.30-2, page 31).

On June 24, 2008, Dr. Williams signed an HSM-18 with multiple restrictions. (Docket Entry No.30-1, page 7). On June 27, 2008, plaintiff was seen by a nurse who noted his request for the renewal of the medical unassigned restriction. (Docket Entry No.30-2, page 30). Dr. Williams denied his request. (*Id.*). Plaintiff claims that Williams lifted the medical unassigned restriction on June 25, 2008; he claims Williams told him on June 30, 2008, that a medical unassigned restriction could mean that he would lose housing and trustee class status. (Docket Entry No.1, page 10). Plaintiff construes her warning as an attempt to intimidate him into not accepting medical restrictions or treatment. (*Id.*). In Step Grievance No. 2008180226, plaintiff grieved Dr. Williams's refusal to order a medical unassigned restriction. (Docket Entry No.1-1, pages 7-8). The response to said grievance shows that plaintiff was given a medical unassigned restriction for ninety days on March 21, 2008, and that such restriction expired on June 24, 2008; the next day his job assignment was changed. (*Id.*, page 8). Plaintiff's medical records show that after he submitted a sick call request on July 3, 2008, requesting to be medically unassigned because of the pain in his shoulder, Dr. Williams ordered a medical unassigned restriction for ninety days. (Docket Entry No.30-1, page 7). On August 13, 2008, plaintiff had a MRI on his left shoulder at UTMB. (Docket Entries No.30-1, page 7; No.30-2,

page 26-28).  Plaintiff again complains that Practice Manager Crawford did not respond to his complaints about Dr. Williams's medical treatment.  (Docket Entry No.15, page 5).

Plaintiff was seen in the infirmary on August 26, 2008, and September 29, 2008, by PA Wang.  (Docket Entries No.1, page 12; No.30-2, page 25).  Plaintiff contends at the September examination, Wang accused him of lying about his shoulder injury, terminated the medical unassigned restriction, and forced him back to work in retaliation for the complaints that plaintiff had filed against NP Hough, Dr. Williams, and Practice Manager Crawford.  (Docket Entry No.1, page 12).  Plaintiff's medical records reflect that Wang noted plaintiff's request to renew the medical unassigned restriction; added a new restriction, and informed plaintiff that the proper restrictions had been given.  (Docket Entry No.30-2, page 23).  Plaintiff again complains that Practice Manager Crawford did not respond to his complaints about his medical treatment.  (Docket Entry No.15, page 6).  Plaintiff unsuccessfully grieved these issues in Step Grievance No. 2009019994.  (Docket Entry No.1-1, pages 13-14).

On October 8, 2008, NP Abbe King saw plaintiff per a sick call request directed to Dr. Williams.  (Docket Entries No.1, page 14; No.15, page 6).  Plaintiff contends that King disregarded the specialist's recommendation and forced him to return to work even though she knew he was suffering excruciating pain in his left shoulder.  (*Id.*).  Plaintiff claims that King told him the MRI results were complete and that he was scheduled for surgery.  (*Id.*).

Medical notes of the sick call exam, signed by Abbe and Dr. Williams, reflect plaintiff's insistence on being medically unassigned and their assessment that he had been given the appropriate restrictions.  (Docket Entry No.30-2, page 22).  Practice Manager Crawford did

7

not respond to plaintiff's complaints about King.  (Docket Entry No.15, page 6).  Plaintiff's Step

Grievances in No. 2009041566 were denied.  (Docket Entry No.1-1, pages 29-30).

<u>B. Searches, Transfers, Disciplinary Convictions, and Grievances</u>

Plaintiff claims that on the morning of July 30, 2008, he filed Step 1 Grievance

No. 2008190520 against Trustee Camp Sgt. David A. Haas and watched the grievance officer

pick up the grievance.[4]  (Docket Entries No.1, page 11; Docket Entry No.15, page 5).  Plaintiff

speculates that the grievance officer informed Haas about the grievance because around 2:00

p.m., Sgt. Haas and Officer David Wood ransacked his cubicle and searched his locker with a

key for the purpose of harassing him.[5]  (Docket Entries No.1, page 11; No.15, page 9).  He

claims they removed personal hygiene products, falsified the confiscation form by alleging that

he had commissary and pornographic material, and charged him with a false disciplinary case in

retaliation for grievances that plaintiff had previously filed against them.  (*Id.*).

Plaintiff contends that Lt. Kramer found him guilty of the disciplinary violation

for possession of contraband in retaliation for the grievances that plaintiff filed against him.

(Docket Entry No.1, page 11).  Plaintiff's pleadings and the summary judgment record show that

Officer Wood charged plaintiff with possession of contraband on July 31, 2008, for which he

was found guilty on August 1, 2008, and assessed punishment of twenty days commissary

restriction.  (Docket Entries No.15-2, page 1; No.30-3, pages 2-6).  Plaintiff's Step Grievances in

No. 2008195354 from this conviction were denied.  (Docket Entry No.1-1, pages 9-10).

---

[4] Plaintiff claims that a few days later, on August 4, 2008, he filed Step 1 Grievance No. 2008193292 within the seven day window prohibited by TDCJ rules.  (Docket Entries No.1, page 11; No.15, page 5).

[5] Plaintiff claims that at some point, Sgt. Haas confronted him about Step 1 Grievance No. 2008190520.  (Docket Entry No.15, page 10).  Plaintiff states that Haas said that he was not through with plaintiff, and tried to get plaintiff to sign a falsified confiscation form for newspapers that plaintiff had retrieved from the trash can in the TV room (*Id.*).

On September 3, 2008, plaintiff complained to Lt. Kramer that Sgt. Haas was retaliating against him by engaging in unspecified acts of discrimination and using Officer Moffett to retaliate against plaintiff.  (Docket Entry No.1, page 12).  Plaintiff claims that Kramer said he was not going against his officers because of the complaints that plaintiff had filed against him.  (*Id.*).  Plaintiff filed Step 1 Grievance No. 2009001688 against Kramer for discriminating against him.  (*Id.*).  Plaintiff complained in Step 2 Grievance that the grievance investigator failed to investigate the complaint of retaliation which could show motive for Officer Moffett's actions.  (Docket Entry No.1-1, page 11).  The response indicated that an investigation showed no evidence of staff misconduct.  (*Id.*, page 12).

Plaintiff claims that he eventually received a response to Step 1 Grievance No. 2008190520, which he had filed in late July 2008.  (Docket Entry No.15, page 5).  He claims that on October 24, 2008, Step 1 Grievance No. 2008193292, which he filed on August 4, 2008, was returned to him in an altered form.[6]  (*Id.*, pages 3, 5).  He complained to Grievance Administrator Keith Clendennor about the grievances, without response.  (*Id.*, page 5).

Plaintiff claims that on October 28, 2008, he filed Step Grievances in No. 2009034385 directly against Kramer for retaliatory discrimination.  (Docket Entry No.1, page 12).  Plaintiff indicated in his Step 2 grievance that on October 17, 2008, Lt. Kramer would not give him a bunk change even though plaintiff had made such request before other inmates whose requests for a bunk change had been granted.  (Docket Entry No.1-1, page 15).  The grievance was denied.  (*Id.*, page 16).

Plaintiff claims, without explanation, that on January 1, 2009, he was sent from the Trustee Camp to the Ellis Unit building and placed in close custody lock-up cell, which had

---

[6] *See* fn 4.

9

previously housed offenders with the chicken pox.  (Docket Entry No.15, page 3).  He returned to the Trustee Camp on January 20, 2009, where officers were ordered to search his property to harass him.  (*Id*.).  At that time, Sgt. Haas confiscated forty-one magazines from plaintiff, which plaintiff claims was in retaliation for the complaints filed against Haas, Wood, and Kramer. (Docket Entries No.1, page 12; No.15, page 3).  Plaintiff claims Haas falsified the confiscation document by having Officer Wood sign it.  Plaintiff claims that Kramer watched Haas and Wood but took no action.  (*Id*.).  Plaintiff filed Step 1 Grievance No. 2009087492 on January 23, 2009, against Officer Wood, Lt. Kramer, and Sgt. Haas.  (Docket Entry No.15, page 3).

Plaintiff claims that on February 24, 2009, Property Officer Cynthia Wood, the wife of Officer David Wood, returned the magazines to him "due to ownership shown," but under the condition that plaintiff quash Step 1 Grievance No. 2009087492.  (Docket Entries No.1, page 13; No.15, page 3).  Plaintiff did not drop the grievance.  (Docket Entry No.15, page 3).

In his Step 2 Grievance No. 2009087492, dated April 10, 2009, plaintiff complained that Haas tampered with the confiscation paper when he alleged that plaintiff refused to sign the form because the magazines had his name on them.  (Docket Entry No.1-1, page 17). Plaintiff also indicated in the same grievance that Property Officer Cynthia Wood advised him to write his name and TDCJ number on all of his property.  (*Id.*).  He did not mention Wood's alleged requirement that he drop the grievance against her husband and others in exchange for the return of the magazines.  In a response to the grievance dated May 1, 2009, plaintiff was advised the items were appropriately confiscated under TDCJ policy due to ownership questioned.  (*Id.*, page 18).  The response further stated that "[o]n 2-24-09 you were able to

establish ownership and the items were returned to your possession." (*Id.*).   The grievance officer found that plaintiff's claims of retaliation were unsubstantiated.  (*Id.*).

On January 28, 2009, Officer Michael Moffett charged plaintiff with a disciplinary violation of refusing to obey Moffett's order to return books that he had checked out to the library.  (Docket Entries No.15-2, page 2; No.30-4, pages 2-5).  Plaintiff was transferred back to the Unit building.  (Docket Entry No.15, page 3).  On February 4, 2009, plaintiff was found guilty of the offense and punishment was assessed at cell and commissary restriction. (Docket Entries No.15-2, page 2; No.30-4, pages 2-5).  On February 18, 2009, plaintiff filed Step Grievances in No. 2009100678 against Moffett on grounds that Moffett filed a false disciplinary case against him in retaliation for complaints that plaintiff had filed against Moffett and Haas in September 2008.  (Docket Entries No.1, page 13; No.1-1, pages 21-22).  The grievance investigator found the charge appropriate and the conviction supported by sufficient evidence; she found no evidence of retaliation.  (*Id.*, page 22).

Plaintiff claims he returned to the Trustee Camp with most of the magazines on March 3, 2009, but he was sent back to the Ellis Unit building on March 9, 2009.  (Docket Entries No.1, page 13, No.15, pages 3-4).  Plaintiff claims that on March 10th, Property Officer Cynthia Wood searched his cubicle and confiscated nine magazines and five legal books in retaliation for plaintiff filing grievances against her husband David, the warden, and other co-workers.  (Docket Entries No.1, page 14; No.15, page 4).  Plaintiff claims that confiscation papers were falsified and alleged that he had a multi-outlet plug.  (Docket Entry No.15, page 4).

Plaintiff filed Step Grievances No. 2009120680.[7]   (Docket Entries No.1, page 14; No.1-1, pages 23-26).   The grievances were denied.   (Docket Entry No.1-1, page 24).

Plaintiff claims on April 14, 2009, he was transferred to the John T. Montford Unit, which is alleged to be a Trustee camp but is really a maximum security psychiatric unit, in retaliation for the grievances that he had filed against the medical department, security, and the administration.   (Docket Entries No.1, page 14, No.15, page 4).   He filed Step 2 Grievance No. 2009142479 on June 3, 2009, complaining that the administration used the State Classification Committee to assist them with a retaliatory transfer.   (Docket Entries No.1, page 14; No.1-1, pages 27-28).   The response dated July 7, 2009, states that "[t]he Ellis unit has not retaliated against you for any reason.   You have been reassigned to Montford."   (*Id.*, page 28).

Plaintiff also contends that on May 26, 2009, he received his property, which had been shipped from the Ellis Unit; he discovered that the property had been searched again for the purpose of harassing him.   (Docket Entry No.15, page 4).   He claims that Cynthia Wood searched his property, confiscated fifteen more magazines, and falsified confiscation papers in retaliation for her husband and co-workers.   (Docket Entry No.1, page 14).   In his Step 2 Grievance No. 2009168662, plaintiff acknowledges that the magazines were confiscated by the Property Officer Ms. Wood because their ownership was questionable, even though plaintiff claims she returned these magazines to him in February 2009.   (Docket Entry No.1-1, page 25). The response to the grievance, dated August 5, 2009, indicates that plaintiff was informed that the confiscation document, dated June 10, 2009, indicated that the magazines were confiscated

---

[7] Step 2 Grievance No. 2009120680, dated May 12, 2009, complains of a retaliatory transfer from the Trustee Camp to the Ellis Unit building and the failure of grievance investigators to address issues with respect to specific property.   (Docket Entry No.1-1, page 23).   Plaintiff alleged that the confiscation of property "was nothing but retaliation by Property Officer Ms. Wood for her husband Mr. Wood and their co-workers."   (*Id.*).

and would not be returned and that the hygiene items that were missing were replaced.  (*Id.*, page 26).  Plaintiff claims the confiscation paper was falsified because the response to the grievance indicated that the property was confiscated on June 10, 2009, after plaintiff had received his other property.  (Docket Entry No.1, page 14).

Plaintiff also claims that he sought the assistance of Wardens Gaston, Werner, and Janicek on numerous occasions about grievance issues.  (Docket Entry No.15, page 3).   On February 9, 2009, plaintiff filed grievances against Assistant Warden John Werner, Assistant Warden Gaston, and Head Warden Alfred Janicek because they failed to take favorable action on his grievances.  (Docket Entry No.1, page 13).  Plaintiff claims that Assistant Warden Werner helped the grievance office falsify a document alleged to be an original to cover-up plaintiff's retaliation claims against Kramer, Haas, and Wood.  (*Id.*).  Plaintiff claims that Warden Eileen Kennedy knew about the retaliation and chose to transfer him to the Montford Unit.  (Docket Entry No.1, page 7).

Based on the foregoing, plaintiff seeks nominal, compensatory, and punitive damages from defendants in their individual capacities on ground that defendants retaliated against him for filing grievances.  (Docket Entry No.1, page 4).  Defendants move for summary judgment, asserting the defense of qualified immunity.  (Docket Entry No.30, page 2).

## II. MOTION TO STAY

Plaintiff moves to stay summary judgment proceedings to allow for service of process on Sgt. Michael Lemons and to complete discovery of state policies, medical records, work rosters, accident reports, legal mail logs, and many other items.  (Docket Entry No.38). Plaintiff's request for discovery is overly broad and most of the documents he seeks are not

relevant to the issues in this case.  Moreover, plaintiff's allegations against Sgt. Lemons are legally frivolous, unexhausted, and subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B). Accordingly, plaintiff's request to stay summary judgment proceedings and to conduct further discovery (Docket Entry No.38) is DENIED.

### III. DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law.  42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984).  Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).  The plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference–not the result of mere negligence.  *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994).  The negligent deprivation of life, liberty, or property is not a constitutional violation.  *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Moreover, to hold a defendant liable under section 1983, plaintiff must adduce facts demonstrating the defendant's participation in the alleged wrong.  *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992).

In all of his pleadings, plaintiff complains of retaliation by defendants, allegedly because he filed grievances against them or other staff members.  Claims of retaliation generally flow from protections provided by the First Amendment.  A prison official may not retaliate

against or harass an inmate for exercising the right of access to the courts, *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998), or for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995)). However, an inmate does not have a right to file a frivolous grievance, and a frivolous grievance cannot support a section 1983 retaliation claim. *See Johnson v. Rodriguez,* 110 F.3d 299, 310, 311 (5th Cir. 1997) (holding that prisoners' constitutional right of access to the courts "is not unlimited" and "encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement") (quotation marks and citations omitted); *Brown v. Craven*, 106 Fed. App'x 257, 258 (5th Cir. 2004) (finding threat of filing frivolous grievance because officer turned off television cannot be the basis of a section 1983 retaliation claim).

Claims of retaliation from prison inmates, however, are regarded with scepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods*, 60 F.3d at 1166. To prevail on a claim of retaliation a prisoner must establish the following elements: (1) the violation of a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325. To demonstrate the requisite retaliatory intent on the defendant's part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166.

A. Sgt. Michael Lemons

Because plaintiff is a prisoner who proceeds *in forma pauperis*, the Prison Litigation Reform Act requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997(e), and 28 U.S.C. § 1915A(b).  In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it.  *Haines v. Kerner*, 404 U.S. 519 (1972).

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist."  *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999).  A review for failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002).

Plaintiff contends that Sgt. Michael Lemons, the kitchen supervisor, retaliated against him for filing grievances against other officers by informing the medical department that plaintiff was lifting weights on the recreation yard and "throwing up" his work restrictions when

forced to work, which resulted in the removal of plaintiff's work restrictions.[8]  (Docket Entry No.1, page 8).  Plaintiff speculates that Lemons's conduct was retaliatory because when plaintiff confronted him, Lemons asked plaintiff whether he was going to write a grievance against him like he wrote against Sgt. Smith and Sgt. More.  (*Id.*, pages 4, 8).

Plaintiff, however, does not appear to be certain that Lemons was the L-Wing officer who informed medical personnel that plaintiff had been lifting weights and complaining about work.  Plaintiff, who was medically unassigned at the time, states that he heard from other inmates that Sgt. Lemons boasted about having plaintiff's medical restrictions removed, and that when confronted, Lemons admitted his role by saying that plaintiff would be alright and threatening to work plaintiff.  (*Id.*, page 4).  Plaintiff later complains in his response to the Order for More Definite Statement that PA John Wang and Dr. Betty J. Williams refused to identify the L-Wing officer who made the false report.  (Docket Entry No.15, pages 7, 8).

In his response to the Order for More Definite Statement, plaintiff outlines the nature of the grievances that he filed against other Ellis Unit officers including Smith and More, none of which implicate Sgt. Lemons.  He cites to only one grievance against Assistant Warden Werner, in which he complains of his work restrictions and his job assignment.  (Docket Entry No.15, pages 16-21).  In short, plaintiff's chronology of events and his litany of grievances do not give rise to an inference that Sgt. Lemons's alleged adverse conduct or his intent in reporting plaintiff to the medical department was retaliatory because of the grievances that plaintiff had filed against other officers.  Instead, plaintiff's pleadings show that Lemons, if he were the L-

---

[8] Plaintiff attached to his original complaint Step 2 Grievance No.2008094949, signed May 12, 2008, reiterating his complaint in the Step 1 Grievance that Lemons fabricated the rec yard story.  (Docket Entry No.1-1, pages 1-2).  In a response dated June 25, 2008, the grievance investigator indicated that plaintiff's allegations of misconduct by Food Service Manager Lemons could not be sustained.  (*Id.*, page 2).

Wing informant, was motivated by plaintiff's reliance on his many restrictions to avoid work. Accordingly, plaintiff's retaliation claim against Sgt. Lemons is without merit and subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Plaintiff also claims that Sgt. Lemons forced him to work at as a pot washer after plaintiff's medical restrictions were removed. (Docket Entry No.1, page 9). Plaintiff contends that he lifted a forty to sixty pound mixing bowl, which exacerbated his old injuries and aggravated his left shoulder injury. (*Id.*). He returned to the medical clinic where PA Wang restored three of the medical restrictions and plaintiff returned to work. (*Id.*). Thereafter, Lemons refused to change plaintiff's work assignment, which plaintiff claims violated his medical restrictions and "continu[ed] his retaliation against me" for filing grievances against other officers. (*Id.*). Plaintiff indicates that he grieved Lemons's conduct but the grievance was not processed. (Docket Entries No.1, page 9; No.1-1, pages 5-6)

An inmate must exhaust "such administrative remedies as are available" prior to bringing a civil action. 42 U.S.C. § 1997(e)(a); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is mandatory. *Id.* at 739. Although the failure to exhaust is an affirmative defense, which a prisoner is not required to plead or prove in this complaint, *Jones v. Bock*, 549 U.S. 199, 216 (2007), a reviewing court may raise the issue *sua sponte* or dismiss a complaint without service on defendants where the face of the pleadings confirm that a prisoner has violated 42 U.S.C. § 1997e(a) by failing to exhaust state remedies before filing suit. *See id.*; *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007). Because plaintiff indicates in his pleadings that his grievance was not processed, his complaint that Lemons retaliated against him by forcing him to work in excess of his restrictions is subject to dismissal for failure to exhaust.

### B. All Other Defendants

Defendants move for summary judgment and assert the defense of qualified immunity.  (Docket Entry No.30).  To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

"To rebut the qualified immunity defense, the plaintiff must show:  (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident."  *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted).  The Court

has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818 (2009).

For the reasons that follow, the Court finds the record does not give rise to a material fact question showing that defendants violated plaintiff's constitutional rights; therefore, plaintiff fails to rebut the defense of qualified immunity.

### 1. Medical Providers

Plaintiff contends that NP Brenda J. Hough, Dr. Betty J. Williams, PA John Wang, and NP Abbe King retaliated against him by their deliberate indifference to his serious medical needs and that they allowed themselves to be used as tools of retaliation. (Docket Entry No.15, pages 7-11). Plaintiff states no facts giving rise to an inference that these defendants acted with a retaliatory animus and no facts showing that he would have received different medical treatment but for the alleged retaliation. Plaintiff's allegation that these defendants allowed themselves to be tools of retaliation is not actionable. Civil rights claims must allege the personal involvement of the defendants. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983).

Moreover, the undisputed summary judgment record reflects no evidence of an adverse retaliatory act. Instead, the medical records attached to defendants' summary motion and the affidavit of expert Dr. Steven Bowers (Docket Entries No.30-1; No.30-2) reflect that defendants provided plaintiff with medical treatment, adjusted his medical restrictions when necessary, and attended to his medical complaints. *See Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In short, plaintiff states no facts, and the record reflects no facts, evincing wanton conduct or official dereliction that would give rise to a

20

colorable claim that these defendants were deliberately indifferent to plaintiff's serious medical needs.  *See Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).  At most, plaintiff voices disagreement with their medical assessment, treatment plan, and opinion that his medical restrictions were appropriate.  An inmate does not have a constitutional right to the treatment of his choice.  *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1150 (5th Cir.), *vacated in part as moot*, 688 F.2d 266 (5th Cir. 1982)).  Mere disagreement with prison medical providers about what constitutes appropriate care does not rise to the level of a constitutional violation.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *see also Smith v. Allen*, 288 Fed. App'x 938 (5th Cir. 2008) (disagreement about treatment for shoulder injury).

With respect to NP King's and PA Wang's misstatements about his medical records and MRI testing and results, such claims amount to no more than mere negligence, which is insufficient to establish deliberate indifference.  *See Varnado*, 920 F.2d at 321. Likewise, to the extent that plaintiff claims that these medical providers forced him to perform work that caused him further injury by their refusal to change his restrictions or to issue a medical unassigned restriction, such claim is a challenge to their medical judgment.  "It is firmly established that negligent or mistaken medical treatment or judgment does not implicate the eighth amendment and does not provide the basis for a civil rights action."  *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993), *abrogated on other grounds by Arvie v. Broussard*, 42 F.3d 249 (5th Cir. 1994).

Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation and deliberate indifference claims against medical providers.

## 2. Administrative Officers and Investigators

Plaintiff next complains that grievance investigators and administrators, to whom he complained, were tools of retaliation.  Generally, he complains that Unit Grievance Investigator Tricia Hollingsworth, Offender Grievance Program Administrator Keith Clendenner, Practice Manager Shanta Crawford, Assistant Warden John Werner, Assistant Warden Gaston, and Warden Alfred C. Janicek did not fully investigate his claims, screen his grievances, respond favorably to his complaints and grievances or failed to respond to the same in retaliation for grievances that he had filed against them and others.[9]  To the extent that plaintiff contends that the responses to his grievances give rise to a retaliation claim, such contention is without merit.  Plaintiff does not have a federally protected liberty interest in

---

[9] Plaintiff claims that the Administrator of the Offender Grievance Program Keith Clendenner retaliated against him by not responding to his complaints.  (Docket Entry No.15, pages 4-5).  Plaintiff claims the complaints were intercepted and answered by Unit Investigator Tricia Hollingsworth or someone in the unit grievance office.  (*Id.*, page 4).

Plaintiff claims that Practice Manager Shanta Crawford did not respond favorably to his complaint about the removal of the medical restrictions and did not respond to his complaints about medical providers.  (*Id.*, pages 5-6).  He claims that Crawford allowed herself to be used to retaliate against him by disregarding such complaints and that she retaliated against him by denying his grievances.  (*Id.*, page 16).

Plaintiff complains that Assistant Warden Gaston, failed to investigate plaintiff's complaints of retaliation and signed off on several grievances without conducting an investigation.  (*Id.*, page 13).

He complains that Warden Alfred C. Janicek failed to investigate his complaints "possibly because of some issue prior to this, which also involved Asst. Warden Thomas, Sgt. More in part, and several other officers."  (*Id.*, page 14).

Plaintiff contends that Unit Grievance Investigator Tricia L. Hollingsworth refused to process two Step 1 grievances by falsely stating that they were filed within seven days of another grievance in violation of TDCJ policy, thereby, allowing Sgt. Lemon's wrongful conduct to go unreported.  (Docket Entry No.15, pages 8-9).

Plaintiff further contends that Assistant Warden John P. Werner signed off on Step 1 Grievance No. 2008193292, with full awareness that it was falsified, and signed off on Step 1 Grievance No. 2008094949, with knowledge that Sgt. Lemons had given a false statement about the report to the medical department regarding plaintiff's activities on the recreation yard.  (*Id.*, pages 13-14).  Plaintiff claims Werner signed off on these grievances in retaliation for plaintiff filing Step 1 Grievance No. 2008038477 on November 1, 2007, against Werner for forcing plaintiff to work against his medical restrictions and for plaintiff complaining about the false statement reported to the medical department, which resulted in the removal of his medical restrictions.  (*Id.*, pages 1, 13, 14, 17).

having grievances resolved to his satisfaction.  *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005); *Beall v. Johnson*, 54 Fed. App'x 796, 2002 WL 31845615 at *1 (5th Cir. 2002).  Thus, the underlying conduct complained of does not raise a constitutional claim.  Moreover, his claims of retaliation by administrators and grievance investigators with respect to his grievances and complaints are speculative, conclusory, and based on nothing more than his personal belief.

Plaintiff also claims that Unit Grievance Investigator Hollingsworth reconstructed Step 1 Grievance No. 2008193292 and returned the grievance to him in retaliation for a grievance that he filed against her and to cover-up the grievance office's involvement with the allegedly wrongful conduct of defendants Haas and Wood.[10]  (Docket Entries No.1, pages 6, 11; No.15, page 12).  Plaintiff does not indicate how Hollingsworth altered the grievance; nor does he state how she and her office were involved with Haas and Wood, except for his conclusory allegation that a grievance officer gave Haas a copy of the grievance.  Moreover, plaintiff states no facts by which the Court might infer her motive and no facts showing causation.

Plaintiff further alleges that Warden Eileen Kennedy and Ellis Unit administrators transferred him to the Montford Unit in retaliation for the complaints and grievances that he filed against Ellis Unit officers and Assistant Warden Werner.[11]  (Docket Entry No.1, page 7).  An inmate does not have a constitutionally protected liberty interest in being assigned to a particular prison unit.  *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996).  *See also Hewitt v. Helms,* 459 U.S.

---

[10] Plaintiff alleges that he filed Step 1 Grievance No. 2008190520 on July 31, 2008, wherein he complained that Sgt. Hass harassed and retaliated against him.  (Docket Entries No.1, page 11; No.15, page 5).  He filed Step 1 Grievance No. 2008193292 on August 4, 2008, which should not have been processed because of the seven-day rule.  (*Id.*).  When he did not receive a response to the grievances, he filed complaints with the administrator of the grievance program.  (*Id.*).  When he received Grievance No. 2008193212, he discovered that the grievance was not the original that he filed.  (*Id.*).

[11] The Fifth Circuit has held that a transfer to an "inferior and more dangerous prison" is not a *de minimis* act for purposes of a claim of retaliation.  *Morris v. Powell*, 449 F.3d 682, 687 (5th Cir. 2006).  However, that decision has no bearing on this case.

460, 467 n. 4 (1983) (holding that an inmate has no liberty interest in a transfer from the general population to administrative segregation even though the transfer results in the loss of "access to vocational, educational, recreational, and rehabilitative programs"); *Harper v. Showers*, 174 F.3d 716, 717-19 (5th Cir. 1999) (holding that an inmate's complaint that he was placed in a cell where he was observed 24 hours a day and moved to another cell at least once a week relied on a legally nonexistent interest and therefore any alleged due process or other constitutional violation arising from his classification was indisputably meritless). Without additional facts to support an inference of a retaliatory intent, the temporal proximity between plaintiff's grievances and his transfer to the Montford Unit is insufficient to establish that Warden Kennedy acted with an improper retaliatory motive. *See Reeves v. Wood*, 206 Fed. App'x 368, 369 (5th Cir. 2006) (finding temporal proximity between grievance and disciplinary action insufficient to establish retaliatory motive). The mere fact that one incident precedes another is not proof of a causal connection. *See Tampa Times Co. v. National Labor Relations Board*, 193 F.2d 582 (5th Cir. 1952). Plaintiff presents no operative facts to support a claim of retaliatory transfer.

To the extent that plaintiff alleges his transfers between the Trustee Camp and the Ellis Unit building were retaliatory, he fails to name a specific defendant who authorized such transfer and he fails to state any facts giving rise to a retaliatory motive or causation.

Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claims by TDCJ administrators and grievance investigators.

### 3. TDCJ Officers

To the extent that plaintiff complains of the July 2008 search of his cubicle and the seizure of contraband by Sgt. David Haas and Officer David Wood, which led to a

disciplinary conviction for possession of contraband, plaintiff fails to set forth a cognizable retaliation claim.  (Docket Entries No.1, page 11; No.15, page 9).  A prisoner has no expectation of privacy in his prison cell; therefore, the Fourth Amendment does not restrict searches and seizures in the cell.  *Hudson v. Palmer*, 468 U.S. 517, 525 n.7 (1984).  Prison officials may search an inmate's cell at any time.  *Id*. at 528-29.

With respect to the items seized at that time, plaintiff states no facts to show that but for the alleged retaliatory motive, defendants would not have seized these materials during a routine cell search.  *See McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (noting that causation requires showing that "but for the retaliatory motive the complained of incident . . . would not have occurred").  The summary judgment record reflects that the items seized during the July 31, 2008, search were contraband, for which plaintiff was disciplined.  (Docket Entry No.30-3, pages 2-7).

With respect to the confiscation of the forty-one magazines by Sgt. Haas in January 2009, on the ground of questionable ownership (Docket Entry No.1, page 12), plaintiff fails to state facts giving rise to an inference of retaliatory intent or showing causation.  Plaintiff acknowledges, and the record shows, that the magazines were returned to plaintiff when he established ownership.

With respect to the two disciplinary convictions he received, *i.e.* one for possession of contraband on July 31, 2008, filed by Officer Wood and one for failing to obey orders to return the library books on January 28, 2009, filed by Officer Moffett, plaintiff fails to set forth facts showing that they were indeed based on contrived charges; therefore, he has not established that "but for" the alleged retaliatory motive of the defendants, he would not have

been disciplined.  The affidavits of defendants David A. Wood and Michael Moffett and the attachments to such affidavits support a finding that plaintiff's allegations of retaliatory intent are implausible.  The uncontroverted summary judgment record shows that plaintiff was found guilty of both disciplinary offenses.  (Docket Entries No. 30-3, pages 2-7; No.30-4, pages 2-5). *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (noting that the existence of "a legitimate prison disciplinary report . . . is probative and potent summary judgment evidence, as [is] evidence of the number, nature, and disposition of prior retaliation complaints by the inmate").

Plaintiff's claim Lt. Kramer retaliated against him by finding him guilty of a disciplinary violation, refusing to take action on his complaints against officers, and refusing to change his bunk is conclusory and speculative.  Plaintiff states no facts giving rise to a retaliatory intent or causation.

Plaintiff's complaint regarding the alleged March 10, 2009, search of his cell and confiscation of magazines and legal books by Officer Cynthia A. Wood in retaliation for the complaints he filed against her husband and other officers (Docket Entry No.1, page 14), also fails for want of facts giving rise to causation.  Plaintiff's Step 2 Grievance No. 2009120680 reflects that Wood confiscated the reading material because another inmate's name was on it. (Docket Entry No.1-1, page 23).

Plaintiff's claim that Property Officer Wood searched his property, confiscated magazines, and falsified the confiscation document after his transfer to the Montford Unit in retaliation for plaintiff filing grievances against her husband and others is also conclusory and speculative.  (Docket Entries No.1, page 14; No.15, page 4).  Plaintiff states in his more definite

26

statement that because of her husband's involvement with other Trustee Camp officers, "it is very much possible that propert[y] officer Ms. Cynthia A. Wood is retaliating for all events through out this suit involving security."  (Docket Entry No.15, page 15).

Accordingly, defendants are entitled to summary judgment on plaintiff's retaliation claims against Trustee Camp officers Haas, Wood, Moffett, and Kramer and Ellis Building Unit Property Officer Cynthia Wood.

### 4. Supervisors

To the extent that plaintiff complains that any TDCJ or UTMB administrator bears liability for the conduct of a subordinate, he fails to state a cognizable claim.  Plaintiff states no facts showing that defendants were responsible for the implementation of any constitutionally deficient policies.  Theories of vicarious liability, such as respondeat superior, cannot support a cause of action under section 1983.  *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983).  A supervisory official "may be held liable if there exists either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).  To state an actionable claim, a civil rights plaintiff must establish a causal connection between the acts or omissions of the defendant and the resultant constitutional deprivation.  *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir. 1981).

Plaintiff states no facts that would give rise to a colorable claim that Assistant Warden John P. Werner, Assistant Warden Gaston, Head Warden Alfred C. Janicek, Senior Warden Eileen Kennedy, and Administrator Keith Clendenner were personally involved in any of the alleged acts of subordinates or that they affirmatively adopted, developed, or implemented

an illegal or wrongful policy that caused any constitutional deprivation.  Plaintiff further fails to show the same with respect to Unit Grievance Investigator Tricia L. Hollingsworth and Practice Manager Shanta Crawford.   "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Accordingly, defendants are entitled to summary judgment on such claim.

## C. Damages

Because plaintiff cannot show the denial of a constitutional right, his claims for compensatory and nominal damages fail.  *See Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 606 (5th Cir. 2008) (noting absent a showing of physical injury, a prisoner may pursue punitive or nominal damages based upon a violation of his constitutional rights).   Moreover, plaintiff's pleadings do not reflect any facts to show that the conduct of any defendant was motivated by evil intent or a criminal indifference that would entitle him to punitive damages. *See Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003) (noting standard requires "a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations").  Accordingly, plaintiff's request for punitive damages is DENIED.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.      Plaintiff's Motion for Stay of Summary Judgment Proceedings (Docket Entry No.38) is DENIED.

2.      Plaintiff's claims against Lt. Michael Lemons are DISMISSED
        with prejudice, as legally frivolous pursuant to 28 U.S.C. §
        1915(e)(2)(B).

3.      Defendants' motion for summary judgment (Docket Entry No.30)
        is GRANTED.

4.      Plaintiff's complaint is DISMISSED WITH PREJUDICE.   All
        claims against all defendants are DENIED.

5.      All other pending motions, if any, are DENIED as moot.

The Clerk shall provide a copy of this Order to the parties.


SIGNED at Houston, Texas, this 16th day of August, 2011.


                                    _____
                                    MELINDA HARMON
                                    UNITED STATES DISTRICT JUDGE